IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAY JACKSON, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-3298 |
| | : | |
| v. | : | |
| | : | |
| UNISYS, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Jones, J.                                                                                                      May 15, 2009

Before the Court is Defendant Unisys, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 4), Plaintiff's Response in Opposition thereto (Doc. No. 6), and Unisys' Reply (Doc. No. 7). For the reasons that follow, Defendant's Motion to Dismiss is granted.

**I.      Procedural History**

On July 14, 2008, Plaintiff Ray Jackson filed a Complaint against Unisys, Inc. Plaintiff filed an Amended Complaint on August 6, 2008. In his Amended Complaint, Plaintiff raises claims pursuant to the Pennsylvania Human Relations Act ("PHRA") (Counts I & II), the Americans with Disabilities Act ("ADA") (Counts III & IV), and the Age Discrimination in Employment Act ("ADEA") (Count V). On October 6, 2008, Unisys filed its Motion to Dismiss Counts I, II, IV, and V of Plaintiff's Amended Complaint. Also on that date, Unisys filed an Answer to Plaintiff's Amended Complaint. On October 21, 2008, Plaintiff filed a Response in Opposition to the Motion to Dismiss. Unisys filed a Reply on October 28, 2008. The matter was reassigned to this court on November 14, 2008.

**II.**     **Factual Allegations**

The court recites the facts as alleged in the Amended Complaint and as viewed in the light most favorable to Plaintiff.

Plaintiff was employed by Unisys from 1997 until his termination in 2005.  (Am. Compl. ¶¶ 3, 11.)  Approximately 8 months prior to his termination, Plaintiff had advised his employer that he was suffering from a severe autoimmune disorder.  (Am. Compl. ¶ 8.)  Representatives of Unisys encouraged Plaintiff to continue working rather than go on short-term disability while his disorder was being treated.  (Am. Compl. ¶¶ 8-9.)  Plaintiff continued working for Unisys.  (Am. Compl. ¶ 10.)  On May 26, 2005, Unisys advised Plaintiff, in writing, that his employment was going to be terminated but that he could pursue other job opportunities within Unisys.  (Am. Compl. ¶ 11.)  Plaintiff was later informed that he was going to be laid off on July 21, 2005, with a termination date of August 18, 2005.  (Am. Compl. ¶ 11.)

Plaintiff was advised that he would be entitled to certain enhancements to his severance if he signed a complete release of all employment-related claims, including claims brought under the ADEA, the ADA, and the PHRA.  (Am. Compl. ¶ 12.)  On May 31, 2005, Unisys presented Plaintiff with a Severance Agreement and Release ("Agreement" or "Severance Agreement").  (Am. Compl. ¶ 13.)  Nothing in the Agreement prevented Plaintiff from being rehired by the Company.  (Am. Compl. ¶ 12.)  According to the Agreement terms, Plaintiff had twenty-one days to review and accept the Agreement, and seven days after his acceptance to revoke the acceptance.  (Am. Compl. ¶ 13.)  Plaintiff signed the Agreement on Monday, June 20, 2005 in front of a Unisys security guard in the main lobby of the Unisys facility.  (Am. Compl. ¶ 13.)  However, Plaintiff erroneously dated the Agreement June 19, 2005, which was a Sunday.  (Am.

Compl. ¶ 13.)

On Monday, June 27, 2005, Plaintiff attempted to revoke his acceptance of the Agreement. (Am. Compl. ¶ 14.) Plaintiff wished to revoke his acceptance pursuant to the Older Workers' Benefit Protection Act ("OWBPA") and pursuant to the terms of the Agreement. (Am. Compl. ¶ 14.) 29 U.S.C. § 626.[1] Unisys refused to accept his revocation, asserting that the seven-day revocation period had expired and rejecting Plaintiff's contention that he had signed the Agreement on June 20. (Am. Compl.¶¶ 14-15.) Unisys claimed that Plaintiff had only until June 26 to revoke, and that Sundays counted in the calculation of days.[2] (Am. Compl. ¶ 15.) Plaintiff's counsel contact Unisys' counsel to reiterate Plaintiff's intent to rescind under the OWBPA. (Am. Compl. ¶ 16.) On June 28, 2005, Joe Tiklits, in-house counsel for Unisys, again rejected Plaintiff's attempt to rescind, and stated, "The law is quite clear on this point. Saturdays and Sundays do not extend the revocation period." (Am. Compl. ¶ 16.)

Plaintiff believes that Unisys knew that he intended to pursue a claim under one or more of the anti-discrimination laws listed in the Severance Agreement. (Am. Compl. ¶ 17.)

On June 27, 2005, Plaintiff learned that the Public Sector Division of Unisys was interested in re-hiring him. (Am. Compl. ¶ 18.) Plaintiff participated in a series of interviews

---

[1] The OWBPA provides that a waiver of claims under the ADEA is not knowing and voluntary unless "the individual is given a period of at least 21 days within which to consider the agreement" and "the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." 29 U.S.C. §§ 626(f)(1)(F)(I) & 626(f)(1)(G).

[2] Plaintiff's Amended Complaint appears to contain a typographical error in Paragraph 16. Resolving all questions in Plaintiff's favor, the Court assumes Plaintiff intended to plead that Defendant "asserted only had until Sunday, June 26, to revoke the agreement." (Am. Compl. ¶ 15.)

and was told by Claudia Langguth, then Vice President HHS Programs, Global Public Sector, that he would be hired.  (Am. Compl. ¶ 18.)  On Monday, July 11, 2005, Ms. Langguth telephoned Plaintiff and informed him that she was completing the paperwork to formalize an offer of re-employment.  (Am. Compl. ¶ 19.)  Plaintiff and Ms. Langguth discussed his salary and management level and confirmed his start date.  (Am. Compl. ¶ 19.)  Ms. Langguth wrote Plaintiff an e-mail stating, "Ray, I am working on the rec [requisition] to get you back to Unisys!  We are thrilled to have you as part of our team.  I will make the position effective July 25, right?  Regards, Claudia."  (Am. Compl. ¶ 19.)  On Tuesday, July 12, Ms. Langguth informed Plaintiff that she had submitted all of the paperwork necessary for Plaintiff's rehire.  (Am. Compl. ¶ 20.)

On Friday, July 15, 2005, Plaintiff received a phone call from Ron Gosdeck, who informed Plaintiff that he would not be given the job offer after all.  (Am. Compl. ¶ 21.)  Later that afternoon, Plaintiff spoke to Jim Baker, the Project Manager for the project to which Plaintiff was initially assigned, who told Plaintiff that he was very disappointed that Plaintiff would not be given a formal letter of hire.  (Am. Compl. ¶ 21.)  That afternoon, Plaintiff spoke to Ms. Langguth who advised Plaintiff that her requisition for his hire had been stopped by the Human Resources department.  (Am. Compl. ¶ 22.)  She repeatedly apologized to Plaintiff, but she was unable to tell Plaintiff why Human Resources had prevented her from rehiring him.  (Am. Compl. ¶ 22.)  Plaintiff believes that Unisys decided to bar his re-hire because of his disorder and/or because Unisys perceived him to be handicapped or disabled.  (Am. Compl. ¶ 23.)  Plaintiff also believes that Unisys decided to bar his re-hire because he had intended to revoke his acceptance of the Severance Agreement and in retaliation for raising claims that Unisys's refusal to acknowledge his rescission violated the OWBPA.  (Am. Compl. ¶ 24.)

Plaintiff filed a charge for discrimination with the EEOC and the PHRC on March 8, 2006, claiming that Defendant refused to re-hire him in July 2005 because of his disability and in retaliation for his attempt to revoke his acceptance of the Severance Agreement.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss 2; Def.'s Mem. in Supp of Mot to Dismiss 2, Ex. A, EEOC Charge, March 8, 2006 ("EEOC Charge").[3])

### III.   Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted).  After the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), "it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct."  Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8) (internal quotation and alteration omitted).  To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level."  Phillips at 234 (quoting Twombly, 550 U.S. at 555) (alternation omitted).  Thus, stating a claim "requires a complaint with enough factual matter (taken as true) to suggest the required element."  Id. (quoting Twombly, 550 U.S. at 556)

---

[3] This court shall consider the EEOC Charge attached to Defendant's Motion to Dismiss. See Pension Benefit Guar. Corp. v. White Consol. Inds., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal citations omitted).

(internal quotation omitted).

**IV.     Discussion**

Plaintiff's Amended Complaint contains five counts.  Count I alleges handicap discrimination in violation of the PHRA for refusing to re-hire Plaintiff in July 2005 and continuing thereafter; Count II alleges retaliation in violation of the PHRA after Plaintiff attempted to rescind the Severance Agreement in order to pursue a claim for discrimination under the PHRA; Count III alleges violations of the ADA when Defendant refused to rehire Plaintiff because of his disability, history of disability and/or perceived disability; Count IV alleges retaliation in violation of the ADA after Plaintiff attempted to rescind the Severance Agreement in order to pursue a claim for discrimination under the ADA; and Count V alleges Retaliation in violation of the ADEA after Plaintiff attempted to rescind the Severance Agreement in order to pursue a claim for discrimination under the ADEA and the OWBPA. Defendants seek to dismiss Counts I, II, IV, and V pursuant to Rule 12(b)(6).

A.     Timeliness of PHRC Claims

Defendant argues that Counts I and II of Plaintiff's Amended Complaint should be dismissed because Plaintiff did not file timely charges of disability discrimination and retaliation with the PHRC.  Plaintiff concedes that he filed his PHRC charge more than 180 days after Defendant failed to re-hire him, on July 15, 2005, but he claims Defendant has continued to discriminate against Plaintiff by continuing not to re-hire him, thus tolling the filing period.

Pennsylvania law requires plaintiffs to file a charge of discrimination with the PHRC within 180 days of the alleged act of discrimination.  43 Pa. Stat. § 959(h); Woodson v. Scott

Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). "If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA." Woodson, 109 F.3d at 925.

The continuing violation doctrine is an equitable exception to the timely filing requirement. West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995) (discussing the continuing violation doctrine in Title VII cases). Under the continuing violation doctrine, a plaintiff may pursue a claim for discriminatory conduct that began prior to the limitations period if he can demonstrate at least one discriminatory act occurred within the limitations period. Rush v. Scott Speciality Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997) (citing West, 45 F.3d at 754). The plaintiff also must show that the harassment is more than the occurrence of isolated acts of discrimination, and instead must demonstrate a continuing pattern of discrimination. Id. (citing West, 45 F.3d at 755). The continuing violation doctrine does not apply to failure to hire, which is a discrete act of discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (holding in a Title VII case that each incident of "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . constitutes a separate actionable unlawful employment practice" and that a plaintiff may only file a charge related to discrete acts that occurred within the appropriate time period); Zankel v. Temple University, 245 Fed. Appx. 196, 199 (3d Cir. 2007) (citing Morgan for the proposition that the continuing violation doctrine has no applicability to discrete acts of discrimination).

The form Plaintiff filled out for his PHRC charge contains a field where the complainant is to list the "Date Discrimination Took Place  Earliest   Latest (All)"  (EEOC Charge 1.) In that

box, Plaintiff typed "July 15, 2005." (Id.) Within the date-of-discrimination field, there is a checkbox where a complainant can mark "continuing action." Plaintiff left this checkbox blank. (Id.) The three-page narrative attached to Plaintiff's EEOC Charge does not allege any discriminatory acts after July 15, 2005, and does not allege that the discrimination was ongoing after that date. (Id. 2-4.) Plaintiff's Amended Complaint states that Defendant discriminated and retaliated against Plaintiff in violation of the PHRA by refusing to re-hire him in July 2005 "and continuing thereafter." (2d Am. Compl. ¶¶ 28, 30.) However, Plaintiff does not allege any facts that suggest a continuing violation. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Unisys' failure to re-hire Plaintiff on July 15, 2005, is a discrete act that falls outside of the 180-day PHRA filing period.

     Plaintiff also argues that the filing period for his PHRA claims should be equitably tolled because Defendant may have decided to permanently bar Plaintiff from reemployment. (Pl.'s Opp'n to Def.'s Mot. to Dismiss 2-3.) This argument is contrary to Supreme Court precedent that failure to hire is a discrete act. The factual allegations in the Amended Complaint provide no basis for applying the doctrine of equitable tolling to this case. Equitable tolling is typically permitted only (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his rights mistakenly in the wrong forum. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). Plaintiff does not argue that any of these situations or any other extraordinary situation caused him to file his PHRA charge late. Therefore, with respect to Counts I and II of the Amended Complaint, Defendant's Motion to Dismiss is granted.

B.  ADA Retaliation

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., prohibits covered employers from discriminating against qualified individuals on the basis of their disabilities. The ADA's anti-retaliation provision states as follows:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA].

42 U.S.C. § 12203(a).[4] "Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003). To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) that he engaged in a protected employee activity; (2) that he was subject to adverse action by the employer either after or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).

Defendant argues that Count IV of Plaintiff's Amended Complaint, claiming retaliation

---

[4] The ADA also prohibits interference, coercion, or intimidation:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).

under the ADA, should be dismissed because Plaintiff has not alleged that he engaged in a protected activity. It appears that Plaintiff contends that his attempt to rescind the Severance Agreement on June 27, 2005, to enable him to assert an ADA claim at a later date, was a protected employee activity. (See Am. Compl. ¶ 34.) The court disagrees. Plaintiff does not allege that he opposed any act or practice made unlawful by the ADA or participated in any proceeding under the ADA prior to June 27, 2005. Although Plaintiff alleges that he wished to rescind the Severance Agreement in order to bring an ADA claim at some later date, he does not allege that he communicated that intent to Defendant. Plaintiff's counsel simply told Defendant's counsel that Plaintiff intended to rescind the Severance Agreement pursuant to the terms of the Agreement and the OWBPA, which imposes specific requirements for releases covering ADEA claims. (Am. Compl. ¶ 16.) Plaintiff does not allege that he communicated his belief that he was discriminated against because of his disability to Defendant at any point prior to the filing of his March 8, 2008, EEOC Charge. Plaintiff does not allege any facts to support his contention that Defendant knew he intended to pursue a claim under one or more of the anti-discrimination laws listed in the Severance Agreement. (See Am. Compl. ¶ 17.) See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (holding that stating a claim "requires a complaint with enough factual matter (taken as true) to suggest the required element"). Therefore, Plaintiff's ADA retaliation claim is dismissed.

    C.    ADEA Retaliation

The Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 et seq., prohibits age discrimination in employment against individuals over age 40. The anti-retaliation provision of the ADEA provides as follows:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA], or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

29 U.S.C. § 623(d). As with the ADA, to establish a prima facie case of retaliation under the ADEA, a plaintiff must show: (1) that he engaged in a protected employee activity; (2) that he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action. Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005). See also Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, [the Third Circuit has] held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others.").

Plaintiff has not alleged that he engaged in a protected activity. Plaintiff's attempt to rescind the Severance Agreement is not a protected activity under the ADEA. That action is clearly not participation in any investigation, proceeding, or litigation under the ADEA, because Plaintiff does not allege that any such proceeding had been initiated at that time. Furthermore, Plaintiff's attempt to rescind the Severance Agreement is not opposition to discrimination on the basis of age because Plaintiff never complained about age discrimination before or during his attempt to rescind the Severance Agreement. Barber v. CSX Distrib. Servs., 68 F.3d 694, 791-92 (3d Cir. 1995) (affirming the dismissal of an ADEA retaliation claim where the plaintiff's complaint letter to the defendants "[did] not specifically complain about age discrimination.

Accordingly, the letter [did] not constitute the requisite 'protected conduct' for a prima facie case of retaliation."); Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006) (referring to Barber v. CSX Distrib. Servs. and stating that "[t]he defect with Barber's retaliation claim was that he never explicitly claimed that he was discriminated against on the basis of age."). Plaintiff's counsel's statement that Plaintiff intended to rescind the Severance Agreement pursuant to the OWBPA, or because refusal to allow Plaintiff to rescind would be "illegal," does translate into a charge of age discrimination; it is simply an argument that the terms of the Severance Agreement are unenforceable. (2d Am. Compl. ¶ 36.) See Welch v. Maritrans Inc., No. 00-2606, 2001 WL 73112, 8 (E.D. Pa. Jan. 25, 2001) (holding that asserting rights under the OWBPA is not a protected activity for the purposes of establishing a claim of retaliation under the ADEA). Cf. Barber, 68 F.3d at 792 ("A general complaint of unfair treatment does not translate into a charge of illegal age discrimination."); Equal Employment Opportunity Comm'n v. Sundance Rehab. Corp., 466 F.3d 490, 500-01 (6th Cir. 2006) (holding that a separation agreement that violated the OWBPA could not establish an ADEA retaliation claim).

If Plaintiff had informed Defendant that he intended to file an age discrimination charge, that would have been protected activity. E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 754 (3d Cir. 1997). However, Plaintiff does not allege that he did so, and he does not allege any facts to support his contention that Defendant knew he intended to rescind the Severance Agreement in order to pursue an age discrimination claim. The court finds that Plaintiff cannot establish a prima facie case of retaliation under the ADEA, and Plaintiff's ADEA retaliation claim is dismissed.

**V.     Conclusion**

Counts I, II, IV, and V of Plaintiff's Amended Complaint are dismissed upon Defendant's Motion.  Defendant did not seek to dismiss Count III of Plaintiff's Complaint, which claims violations of the ADA (other than retaliation).  Count III shall go forward to discovery.

An appropriate Order follows.